UNITED STATES OF AMERICA,

        Plaintiff,                    Hon. David M. Lawson

v.                                Case No.2:17-cr-20790

ROBERT A. GROSS               Misc. Case No. 18-50368

        Defendant.

_____/

## MOTION FOR RECOGNITION OF CRIME VICTIM STATUS AND FOR FULL AND TIMELY RESITUTION

      Movant and victim Alec Lang ("Lang") by and through his counsel, moves for recognition of his status as a "crime victim" in this case, as that term is defined in 18 U.S.C § 3771(e). Lang also requests that the Court enter an Order awarding full and timely restitution as provided by law pursuant to 18 U.S.C. §§ 3771(e)(6) and 1343. As grounds for this Motion, Lang avers to the Court as follows:

      1.    Lang established an attorney-client relationship with the Defendant Robert A. Gross ("Defendant") and received advice and counsel from Defendant on multiple business related transactions, over the span of many years.

      2.    Defendant communicated with Lang and advised him of a business investment opportunity. Through fraud and false promises, Defendant obtained

Lang's participation in the fraudulent investment scheme. (Exhibit 1, Affidavit of Alec Lang.)

3. In reliance upon Defendant's advice and counsel, Lang lent money to William Gonte ("Gonte") and Brian Benderoff ("Benderoff"), vouched for the credibility and honesty of Gonte and Benderoff, and established an attorney-client relationship for the purpose of preparing loan documents, and representing Lang with respect to multiple promissory notes and the related closing activities.

4. Lang was contacted by the Defendant on more than one occasion, who reported an investment opportunity that Defendant could arrange through contacts with, Gonte and Benderoff, unrelated clients, with whom Defendant maintained an attorney-client relationship.

5. Defendant represented that the loans were related to a type of legally permissible investment in so-called viatical settlements.

6. A viatical settlement is an arrangement whereby a person with a terminal illness sells their life insurance policy to a third party for less than its mature value, in order to benefit from the proceeds while alive.

7. Defendant encouraged Lang's participation in the placement of the investment by affirmative representations that the funds were being allocated to a permissible practice involving factoring of life insurance policies.

8.     Acting upon the advice of his counsel, Defendant, Lang participated in five (5) separate loan transactions documented by promissory notes and ostensibly accompanied by personal guarantees, and UCC filings confirming a secured relationship.

9.     The five (5) promissory notes were issued, and are dated as follows:

| Date | Debtor(s) | Amount |
|------|-----------|--------|
| 03/14/16 | Benderoff and Gonte | $250,000 |
| 05/17/16 | Benderoff and Gonte | $330,000 |
| 05/18/16 | Benderoff and Gonte | $485,000 |
| 05/23/16 | Benderoff and Gonte | $275,000 |
| 05/25/16 | Benderoff and Gonte | $575,000 |

(Exhibit 2, Promissory Notes, Guarantees, and Security Agreements).

10.     The first note had a maturity date of April 26, 2016, and the remaining four notes matured on June 30, 2016 (Exhibit 2).

11.     Lang's total financial loss due to Defendant's misrepresentations equal approximately $1,915,000, plus default rate interest as provided for in the promissory notes.

12.     Upon information and belief, the Plaintiff, by and through its agency, Department of Homeland Security, seized funds from the above-named debtors on

June 23, 2016, which the Plaintiff believes were, in part, proceeds from Lang's loans.

13.     Plaintiff filed a Complaint for Forfeiture shortly thereafter on December 23, 2016 in the United States District Court for the Eastern District of Michigan, Docket No. 16-cv-14460.

14.     Counsel for Lang called the United States Attorneys' Office for the Eastern District of Michigan and spoke to AUSAs Andrew Yahkind and Phillip Ross to inform them of Lang's status as a victim.

15.     Mr. Yahkind requested that Lang's counsel identify the represented victims in writing and direct the correspondence to the attention of Mr. Ross.

16.     On January 23, 2017, attorney Lawrence Acker mailed a letter to Mr. Ross that identified each of Defendant's victims, along with a short summary of the victims' involvement.  (Exhibit 3, January 23, 2017 Letter to AUSA Philip Ross.)

17.     On December 7, 2017. The parties to this entered into a Plea Agreement pursuant to Fed. R. Crim. P. 11 ("Agreement"), which the Court took under advisement (Exhibit 4, Rule 11 Plea Agreement).

18.     In the Agreement, Defendant agreed to enter a plea of guilty to Count-one of the Information for a violation of 18 U.S.C. § 1843, wire fraud.

19.    Under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771 *et seq.*, any person who is directly and proximately harmed by the commission of a federal offense is afforded certain rights mandated by statute.

20.    The rights under the CVRA include, but are not limited to, a right to be heard and to full and timely restitution.

21.    Pursuant to the Mandatory Victims' Rights Act ("MVRA"), 18 U.S.C. § 3663A, victims of certain crimes, including crimes against property by fraud or deceit, are entitled to restitution.

22.    On January 12, 2018, Sherri Holloway, Victim Witness Specialist, sent a letter to Larry Acker, counsel for certain victims, advising him of their rights under the CVRA.  Lang was omitted as a listed victim and therefore not given notice. (Exhibit 5, January 12, 2018 Letter from Sherri Holloway.)

23.    On January 22, 2018, counsel for Lang sent a letter to the probation department with a copy to AUSA Yahkind requesting to be considered a crime victim under the CVRA.  (Exhibit 6, January 23, 2018 Letter to Sherri Holloway.)

24.    The Plaintiff, through its agency, the Department of Justice, failed to notify Lang of his rights as a victim of the crime committed by the Defendant, and therefore, Lang was not heard at the bond hearing, and was unable to give input as to the plea agreement entered into by the Plaintiff and Defendant.

25.    Moreover, Plaintiff did not send Lang the standard documents from the victim witness coordinator that notify a victim of his rights, and allow submission of a victim's impact statement before sentencing, which is set for April 6, 2018.

26.    In accordance with L.R. 7.1 by way of LCrR 12.1(a), on February 19 and 20, 2018 counsel for Lang contacted counsel for Plaintiff and Defendant, respectively, to seek concurrence with his motion and explain the nature of the motion and its legal basis, but did not obtain concurrence in the relief sought.

**ACCORDINGLY**, Alec Lang requests this Honorable Court to enter an order that:

A.    Recognizes Lang as a crime victim under the CVRA;

B.    Allow Lang to make an in-court victim impact statement at the Defendant's sentencing hearing;

C.    Awards Lang full and timely restitution pursuant to the CVRA and MVRA; and

D.    Orders any other relief that this Court deems appropriate.

Respectfully submitted,


/s/ *Evan H. Kaploe*
Evan H. Kaploe (P75831)
*Attorneys for Victim Alec Lang*

March 5, 2018

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

v.

ROBERT A. GROSS

               Defendant.

Hon. David M. Lawson

Case No.2:17-cr-20790

Misc. Case No. 18-50368

_____/

## MOVANT ALEC LANG'S BRIEF IN
## SUPPORT OF HIS MOTION FOR RECOGNITION OF CRIME VICTIM
## STATUS AND FULL AND TIMELY RESITUTION

      Lang Alec Lang respectfully submits this brief in support of his motion to be recognized as a "victim" in this case, to make an in-court impact statement, and to receive restitution, all pursuant to the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771.

# CONTROLLING AUTHORITY

Fed. R. Crim. P. 11

Fed. R. Crim. P. 60

18 U.S.C. § 1343

18 U.S.C. § 3663A

18 U.S.C. § 3771

Payne v. Tennessee, 501 U.S. 808 (1991)

In re McNulty, 597 F.3d 344 (6th Cir. 2010)

Rupert v. Daggert, 695 F.3d 417 (6th Cir. 2012)

United States v. Gale, 468 F.3d 929 (6th Cir. 2006)

United States v. Weiner, 518 F.App'x 358 (6th Cir. 2003)

# INTRODUCTION

Lang Alec Lang adopts the facts as stated in his Motion for Recognition as a Crime Victim and for Restitution, and will not burden with Court by restating those facts here.

## ISSUES PRESENTED

1.  Should the Court order that Alec Lang be a "crime victim" pursuant to the Crime Victims' Rights Act?

2.  Should the Court afford Alec Lang rights as a "crime victim" under the Crime Victims' Rights Act including fair and full restitution?

## ARGUMENT

**1. Alec Lang WAS as a "Victim" of the Defendant's Crime Under the CVRA.**

A.  <u>The CVRA Creates Broad Rights for Crime Victims.</u>

The CVRA was designed to be a broad and encompassing statutory victims' bill of rights. <u>United States v. Degenhardt</u>, 405 F.Supp. 2d 1341 (D. Utah 2005)(quoting 150 CONG. REC. S4261 (daily ed. Apr. 22, 2004)(statement of Sen. Feinstein). Congress intended the CVRA to dramatically rework the federal criminal justice system. In the course of construing the CVRA, the Ninth Circuit observed: "The criminal justice system has long functioned on the assumption that crime victims should behave like good Victorian children – seen but not heard. The Crime Victims' Rights Act sought to change this by making victims

independent participants in the criminal justice process." <u>Kenna v. U.S. Dist. Court for C.D. Cal.</u>, 435 F.3d 1011, 1013 (9th Cir. 2006). Accordingly, because the CVRA is remedial legislation, courts should "interpret the provisions of this Act liberally to facilitate and accomplish its purposes and intent." <u>Elliott Industries Ltd. Partnership v. BP America Production Co.</u>, 407 F.3d 1091, 1118 (10th Cir. 2005).

Not only must the Act as a whole be interpreted liberally, but the Act's definition of "crime victim" requires a generous construction. After reciting the direct-and-proximate harm language at issue here, one of the Act's two co-sponsors – Senator Kyl – explained that "[t]his is an *intentionally broad definition* because all victims of crime deserve to have their rights protected, whether or not they are the victim of the count charged." 150 CONG. REC. S10912 (Oct. 9, 2004)(emphasis added).

The description of the victim definition as "intentionally broad" was in the course of floor colloquy with the other primary sponsor of the CVRA -Senator Dianne Feinstein. The Ninth Circuit has given particular significance to Senators Kyl and Feinstein's views, explaining that "floor statements by the sponsors of the legislation are given considerably more weight than floor statements by other members .... And they are given even more weight where, as here, other legislators did not offer any contrary views. Silence, the maxim goes, connotes assent,... and so we can draw from the fact that no one registered disagreement with Senators

2

Kyi and Feinstein on this point the reasonable inference that the views they expressed reflected a consensus, at least in the Senate." Kenna, 435 F.3d at 1015-16. And other courts, too, have relied on this statement to give a broad construction to the CVRA. See Degenhardt, 405 F.Supp.2d at 1344 (relying on Senator Kyi's remarks that the definition of victims is "intentionally broad").

The Sixth Circuit, in its first CVRA case, relied on the above-mentioned analysis. It stated in In re McNulty, 597 F.3d 344, 351 (6th Cir. 2010) that "[b]ecause our Court has not had the opportunity to determine whether a petitioner qualifies as a "victim" pursuant to the CVRA, we look to our sister Circuits for guidance. It adopted the analyses of In re Rendon Galvis, 564 F.3d 170, 175 (2d Cir. 2009) (citing In re Antrobus, 519 F.3d 1123, 1126 (10th Cir.2008). Now, after time passed since its case of first impression, the Sixth Circuit stands with its sister courts for purposes of defining "crime victim" broadly. United States v. Weiner, 518 F.App'x 358, 366 (6th Cir. 2003). For these reasons, the statutory language at issue in this case must be construed broadly in favor of the victim, Alec Lang.

B.   The CVRA Recognizes as Victims anyone Who has Been Directly and Proximately Harmed by a Crime.

The Defendant entered into a Rule 11 Plea Agreement with the Government, whereby he agreed to "enter a plea of guilty to Count One of the Information, which charges him with wire fraud in violation of 18 U.S.C. § 1343." (Exhibit 4, Rule 11 Plea Agreement.) Under the CVRA, Alec Lang was a victim of this crime,

as he was "a person *directly and proximately harmed*" by it. 18 U.S.C. § 3771(e)(emphasis added). "The CVRA requirement that the victim be "directly and proximately harmed" encompasses the traditional but for and proximate cause analyses." In re McNulty, 597 F.3d 344, 350 (6th Cir. 2010).

The plain language of the Crime Victims' Rights Act indicates that the court should make a two-fold inquiry to determine who is a "victim": First, was the person "directly" harmed? And, if so, was the harm "proximate" to the crime? The straightforward way to read the statute is that the "direct harm" component requires the court to determine whether the defendant's crime was a "but for" cause of harm to the person and that the "proximate harm" component requires the court to determine whether that harm to the victim was a reasonably connected consequence of the crime.

United States v. Donaby, 349 F.3d 1046 (7th Cir. 2003) provides a useful illustration of this approach. In that case, the defendant robbed a bank. During his flight from the bank, the defendant's stolen getaway car (a police vehicle) was damaged. The district court awarded restitution to the police department for the damage to the vehicle under the Mandatory Victims Restitution Act of 1986 ("MVRA"), which uses the same direct-and-proximate-harm language found in the CVRA. See 18 U.S.C. § 3663A(a)(2); see also Paul G. Cassell, *Recognizing Victims in the Federal Rules of Criminal Procedure: Proposed Amendments in*

4

*Light of the Crime Victims' Rights Act,* 2005 BYU L. Rev. 835, 857 (2005)(noting that the CVRA's definition of "victim" comes from the earlier MVRA). Interpreting that specific language, the Seventh Circuit explained that "but for the robbery, it is certain that this particular chase would not have occurred." Id. at 1053. Moreover, the court explained that direct-and-proximate harm is not limited "to the elements of the offense.... Thus, while fleeing the bank is not an element of bank robbery, the damage to [the police department] was a direct and proximate consequence of the specific conduct involved in robbing the bank." Id. Because the chase was a "direct and foreseeable consequence of the robbery," Id. at 1055, the police department was a victim of the crime - even though no police officer was anywhere close to the bank when it was robbed.

Applying these principles here, the question then becomes whether the defendant's scheme to defraud or obtain money and property by materially false or fraudulent pretenses, representations, or promises was the "but for" cause of Lang's financial loss and, if so, whether such loss was a foreseeable outcome of the misrepresentations made. Both requirements are plainly satisfied, as explained in the section below.

C.    <u>Lang Alec Lang was Directly and Proximately Harmed by the Defendant's Crime.</u>

      i.    *The Defendant's crime was the "but for" cause of Lang's financial loss.*

The Defendant sought to obtain multiple loans from Lang. Defendant falsely represented that the loan proceeds were to be used to participate in legitimate investments regarding viatical settlements. After the first few loans, Defendant explained that the two alleged investors, Benderoff and Gonte, needed to "clear markers" in Las Vegas to release additional moneys for the same investment purposes. Further, Defendant stated that without Lang's additional loans, the investors would not be able to make the viatical settlement investments, and the original loans would be left unpaid. In reliance of Defendant's misrepresentations, Alec Lang loaned additional funds. If Defendant had not made materially false representations, Lang would not have loaned any funds, let alone the initial three loans prior to learning of the "markers."

      ii.    *The Defendant's crime was reasonably connected to Lang's financial loss.*

The only remaining question is whether the defendant's crime was reasonably connected to the Lang's financial loss. The First Circuit has a helpful explanation the kind of connection that is required to satisfy the direct-and-proximate harm requirement (doing so in connection with a restitution statute containing identical language, 18 U.S.C. § 3663(a)(2)). The Circuit began by

observing that a definition of victim that rests solely on "but for" causation would be too broad. "Even if but for causation is acceptable in theory, limitless but for causation is not. Restitution should not lie if the conduct underlying the offense of conviction is too far removed, either factually or temporally, from the loss." United States v. Vaknin, 112 F.3d 579, 589 (1st Cir. 1997). Accordingly, the First Circuit concluded that not only must "but for" causation be shown "but also that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally)." The watchword is reasonableness. A sentencing court should undertake an individualized inquiry; what constitutes sufficient causation can only be determined case by case, in a fact-specific probe." Id.

Here, the connection between the defendant's misrepresentations and Lang's financial loss was reasonably close. The loaned money went straight from Lang to the investors. However, Defendant drafted all the promissory notes and security instruments used to secure Lang's trust in believing that the investments were legitimate and that he would be repaid with interest. The passage of time between the loans, which was minimal, is not particularly significant because the causation remains clear. See PROSSER AND KEETON ON THE LAW OF TORTS, § 43 at 283 (5th ed. 1984)("Remoteness in time ... may give rise to the likelihood that other intervening causes have taken over the responsibility. But when causation is found, and other factors are eliminated, it is not easy to discover any merit whatever in the

contention that such ... remoteness should of itself bar recovery. The defendant who sets a bomb which explodes ten years later... has caused the result, and should obviously bear the consequences.").

Most important, the Defendant not only *could* reasonably foresee a Lang's financial loss stemming from his misrepresentations - he in fact *did* foresee the loss. The law on foreseeability has never required perfect foresight. Instead, there is "universal agreement" that "what is required to be foreseeable is only the 'general character' or 'general type' of the event or harm, and not its 'precise' nature, details, or above all manner of occurrence." PROSSER AND KEETON ON THE LAW OF TORTS, § 43, at 299 (5th ed. 1984). Of course, the "general character" of the harm that the Defendant was creating when he made material misrepresentations to Lang and the other victims, was that Benderoff and Gonte would not use the borrowed money for any legitimate investment. The Sixth Circuit explained that:

> Proximate causation involves examining the foreseeability of consequences and whether a defendant should be held legally responsible for such consequences given his negligent acts or omissions. This Court has defined proximate cause as "a foreseeable, natural, and probable cause." Such causation is distinct from factual or "but for" causation, and issues of proximate causation thus call for an independent, searching inquiry, the focus of which is whether the result of conduct that created a risk of harm and any intervening causes were foreseeable. Probability of harm is thus a relevant consideration to determine whether the defendant's conduct was foreseeable or if the defendant should be held legally liable in light of the circumstances. Since there are risks that can be foreseen but would

not be avoided by a reasonable person, for liability to attach the harm must be of a kind that defendant should have avoided or it must be shown that defendant's actions presented an unreasonable risk of harm.

Rupert v. Daggert, 695 F.3d 417, 425-26 (6th Cir. 2012), citing Jones v. Detroit Med. Ctr., 490 Mich. 960 (2011).

Due to Defendant's attorney-client relationship between Benderoff and Gonte and Defendant, the Defendant actually foresaw Benderoff and Gonte using the loaned money from all the victims, including Lang, to perpetrate a fraud.

### iii. Lang is a Crime Victim Irrespective of the Actual Federal Offense in the Agreement

For scheme-based crimes such as wire fraud and mail fraud,... the term "victim" is broadly defined by the MVRA. United States v. Atlantic States Cast Iron Pipe Co., 612 F.Supp. 2d 453, 470 (D. NJ. 2009).

Several courts have interpreted this language to hold that restitution: (i) may be ordered to a victim not named in the indictment, provided that the victim was "directly harmed by the defendant's criminal conduct in the course of a scheme or conspiracy." United States v. Henoud, 81 F.3d 484, 489 (4th Cir.1996); see also United States v. Kones, 77 F.3d 66, 70 (3d Cir.1996); (ii) may be ordered for losses which result from acts or conduct related to the scheme, but for which the defendant was not convicted; cf. United States v. Lawrence, 189 F.3d 838, 846 (9th Cir. 1999); United States v. Hensley, 91 F.3d 274, 277 (1st Cir. 1996); or 3) may be ordered for losses of a common scheme, even though the loss was caused by conduct occurring outside the statute of limitations. See United States v. Dickerson, 370 F.3d 1330, 1342 (11th Cir. 2004).

United States v. Fallon, 470 F.3d 542, 549 n.12 (3rd Cir. 2003).

And as described in further detail below, the Eastern District of New York's analysis of whom constitutes a crime victim, should not solely be limited to those persons merely harmed by the offense plead to, rather, the class of victims is much broader. United States v. Turner, 367 F.Supp. 2d 319 (E.D.N.Y 2005). Given that sentencing guidelines and restitution order are not calculated the same way, and there are various reasons why a prosecutor might seek a lesser custodial sentence for a Defendant than the statutory maximum, it weighs against public policy to limit the victims by a similar theory.

Therefore, despite Defendant's plea of guilty to one-count of wire fraud, his fraudulent misrepresentations and promises to Lang were the direct and proximate cause of Lang's financial loss. Whether the Government decides to agree to a lesser offense has no bearing on Lang's right to restitution.

> iv.    *Case law proves that Lang was a "victim."*

The case law amply supports the position that Lang should be recognized as a "victim" of Defendant's crime. The Eleventh Circuit, in a wire fraud case, stated that The CVRA does not limit the class of crime victims to those whose identity constitutes an element of the offense or who happen to be identified in the charging document. The statute, rather, instructs the district court to look at the offense itself only to determine the harmful effects the offense has on parties. Under the plain language of the statute, a party may qualify as a victim, even though it may not

have been the target of the crime, as long as it suffers harm as a result of the crime's commission. <u>In re Stewart</u>, 552 F.3d 1285, 1289 (11th Cir. 2008).

Moreover, The CVRA does not require that the elements of the offense be committed "against" a person in order for that person to be recognized as a protected "victim" under the CVRA. To the contrary, this Court has observed that "[t]he definition of a 'victim' under the CVRA is not limited to the person against whom a crime was actually perpetrated. Rather the term 'victim' includes any 'person directly and proximately harmed as a result of the commission of a Federal offense . . . .' " <u>In re Mikhel</u>, 453 F.3d 1137, 1139 n.2 (9th Cir. 2006) (emphasis added). In a case involving mail fraud, the Eastern District of New York, in analyzing the scope of victims of the defendant's scheme, stated "[w]hile the offense charged against a defendant can serve as a basis for identifying a 'crime victim' as defined in the CVRA, the class of victims with statutory rights may well be broader. Specifically, courts must decide whether the CVRA accords rights to persons harmed by any uncharged criminal conduct attributed to the defendant." <u>United States v. Turner</u>, 367 F.Supp. 2d 319, 326 (E.D.N.Y 2005). The Court also noted that "crime victim" include any person who would be considered a "crime victim" if the government were to establish the truth of the factual allegations in its charging instrument. <u>Id</u>.

In this case, the Government filed an Information against the Defendant that alleged one-count of wire fraud. Specifically, the Information stated:

> From at least in or around 2013 to at least in or around June 2016, in the Eastern District of Michigan and elsewhere, the defendant, ROBERT A. GROSS, devised and intended to devise a scheme to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations, promises and omissions.
>
> As part of the scheme, ROBERT A. GROSS made false representations to numerous creditors so as to secure funds from those creditors for the benefit of PERSON A and PERSON B....

> Information, United States v. Robert A. Gross, 17-cr-20790 (E.D. Mich. Dec. 7, 2017), ECF No. 1).

The Turner court's analysis would lead this Court to conclude that Lang is a victim as long as, assuming the facts in the Information are correct, Defendant directly and proximately caused financial harm to Lang. And since the charging instrument need not name the specific victims, in conjunction with Defendant's long-standing relationship with Lang as his attorney, drafting the loan documents and security agreements, and obtaining money through false promises and representations, Lang is plainly a victim under the case law.

## 2. Lang Alec Lang has the Right to Make an In-Court Victim Impact Statement.

This court and others have held that the right to be reasonably heard guarantees victims the right to make an in-court statement. As this court has explained, "At a sentencing hearing, the other participants will speak directly to the

12

judge. Read against this backdrop, the CVRA commands that a victim should be treated equally with the defendant, defense counsel, and the prosecutor, rather than turned into a 'faceless stranger.'" Degenhardt, 405 F.Supp. 2d at 1348 (quoting Payne v. Tennessee, 501 U.S. 808, 825 (1991)). The Ninth Circuit has reached an identical conclusion, citing this court's decision as persuasive authority. *Kenna v. U.S. Dist. Court for C.D. Cal*, 435 F.3d 1011,1017-18 (9th Cir. 2006). These holdings are consistent with the intentions of the CVRA's drafters. As Senator Kyi explained, "the very purpose of this section is to allow the victim to appear personally and directly address the court." 150 CONG. REC. S10,911 (daily ed. Oct. 9, 2004) (statement of Sen. Kyl), quoted in Degenhardt, 405 F.Supp. 2d at 1346. Speaking directly to the defendant here is particularly important for the Lang. This court has noted that crime victims may want to speak "to regain a sense of dignity and respect rather than feeling powerless and ashamed...." Degenhardt, 405 F.Supp.2d at 1348 (internal quotation omitted). Lang believes that it is important to address the individual that not only defrauded his, but also, violated his trust and confidence.

**3. The Court Should Award $1,915,000 Plus Interest as Restitution for the Financial Loss Incurred by Lang Alec Lang.**

The court should also award restitution for the financial damage caused by the Defendant. Under the CVRA, a victim has "[t]he right to full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6). Additionally, pursuant to

the Mandatory Victims Restitution Act of 1996 ("MVRA"), "[n]otwithstanding any other provision of law, when sentencing a defendant convicted of an offense described in subsection (c), the court shall order, in addition to, or in the case of a misdemeanor, in addition to or in lieu of, any other penalty authorized by law, that the defendant make restitution to the victim of the offense...." 18 U.S.C. § 3663A(a)(1). The MVRA covers victims of crimes against property, including a crime committed by fraud or deceit. Id. § 3663A(c)(1)(A)(ii). Like the CVRA, the definition of a victim under the MVRA means a person directly and proximately harmed as a result of the commission of an offense. 18 U.S.C. § 3663A(a)(2).

In a similar case involving a fraudulent scheme to obtain loans, the Sixth Circuit affirmed the restitution order by the district court in United States v. Gale, 468 F.3d 929, 941-42 (6th Cir. 2006), cert. denied, 551 U.S. 1162 (2007)(holding that "[i]n general, a district court must order restitution from a defendant convicted 'of an offense against property ... including any offense committed by fraud or deceit" if an identifiable victim has suffered a loss.'")

With regard to Lang's financial loss, he requests that the Court order the Defendant to pay the amount of money loaned, plus the lost profits expected by virtue of the anticipated interest due on the loans. When an MVRA victim is identified, the government must prove "the amount of the loss sustained by [the] victim as a result of the offense" by a preponderance of the evidence. 18 U.S.C.

§ 3664(e); See United States v. Chalupnik, 514 F.3d 748, 754 (8th Cir. 2008). "[T]he amount of restitution that may be awarded is limited to the victim's provable actual loss...." Id.; see also United States v. Messner, 107 F.3d 1448, 1455 (10th Cir. 1997). The proper measurement of loss is lost net profit, not lost gross income. United States v. Beydoun, 469 F.3d 102, 108 (5th Cir. 2006).

Lang made five (5) loans to Gonte and Benderoff, all of which were fraudulently induced by Defendant, and totaled $1,915,000 between March and May 2016. These loans were evidenced by promissory notes, security agreements, and guarantees. (Exhibit 2.) Each loan had a stated interest amount and a maturity date. Consequently, not only did Lang suffer a financial loss of the principal amount due on the loans, but also, lost profits from the interest.

The first promissory note dated March 14, 2016, in the principal amount of $250,000, with a maturity date of April 26, 2016 has a default interest rate of seven (7.0%) percent per annum. Each of the other four notes also have a default interest rate of seven (7.0%) percent per annum. As such, it is fairly easy to compute the lost profit based upon the failure to repay the guaranteed loans. Each note was due approximately forty five (45) days from the date of the note. The promissory notes do not appear to have an initial interest amount stated, therefore, interest only began to accrue upon default. The total amount

of interest due to Lang as of February 28, 2018 is $233,031.33. (Exhibit 7, Amortization Schedule.)

In this case, the defendant is covered by the MVRA, and Lang therefore asks this Court to enter a restitution order in the total amount of $2,148,031.33. This amount constitutes the principal balance due on the loans obtained by fraud, plus the interest due on those loans.

The Defendant may argue that his financial resources are limited. Assuming he carries his burden of proof on this point, that fact should have no bearing on the size of the restitution award. Congress has directed that "[i]n each order of restitution, the court shall order restitution to each victim in *the full amount* of each victim's losses as determined by the court and *without consideration of the economic circumstances of the defendant.*" 18 U.S.C. § 3664(f)(1)(A) (emphases added).

### 4. The Court is required to decide the Victim's motion "Forthwith," with Sufficient Time to Seek Appellate Protection Prior to Sentencing.

Pursuant to Fed. R. Crim. P. 60(b)(1) "[t]he Court must promptly decide any motion asserting a victim's rights described in these rules." Additionally, under 18 U.S.C. § 3771(d)(3), the court is required to "take up and decide" Lang's motion asserting his rights as a victim "forthwith." This could mean that the court is required to decide the motion immediately. See BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "forthwith" as "immediately; without delay"). Lang, believes,

16

however, that it is important to give the Court an opportunity to carefully review his motion and, despite its prior decision, for the U.S. Attorney's Office to hopefully support his efforts. See 18 U.S.C. § 3771(c)(1) (Justice Department employees required to "make their best efforts to see that crime victims are ... accorded their rights" under the CVRA).

Denial of relief sought may be appealed immediately to the Court of Appeals, which must decide the matter within 72 hours of the filing of the petition. 18 U.S.C. § 3771(d)(3). Lang therefore asks that the Court schedule a hearing or decide on the motion with sufficient time for Lang to seek appellate protection of his rights in the Sixth Circuit before the Defendant's April 6, 2018 sentencing. See 18 U.S.C. § 3771(d)(3) (victim entitled to seek mandamus review of order denying victims' rights; court of appeals must decide such application with 72 hours of filing).

To be clear, Lang is seeking to have the court ruled on his motions to have Alec Lang declared a "victim," to be permitted to present an impact statement, and to be eligible for restitution. He fully understands that the actual sentence, including how much prison time the defendant should serve and how much restitution he should be ordered to pay will be resolved by the Court when it imposes sentence on April 6, 2018.

To be clear on one other point, as part of their right to be "reasonably heard" at sentencing, Lang simply would like the opportunity to complete a victim impact statement. Recall, that the Defendant was not just a mere acquaintance to Lang, rather, he was Lang's trusted advisor on all business matters, as well as a friend. Lang's right to do this is protected by the CVRA.

## CONCLUSION AND REQUESTED RELIEF

**ACCORDINGLY**, Lang Alec Lang requests this Honorable Court to enter an order that:

A.      Recognizes Lang as a "crime victim" of Defendant's offense under the CVRA;

B.      Allow Lang to make an in-court victim impact statement at the Defendant's sentencing hearing;

C.      Award restitution to Lang in the amount of at least $2,148,031.33; and

D.      Orders any other relief that this Court deems appropriate.

Respectfully submitted,

/s/ *Evan H. Kaploe*
Evan H. Kaploe (P78374)
*Attorneys for Victim Alec Lang*

March 5, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that on March 5, 2018, I electronically filed the above document(s) with the Clerk of the Court using the ECF system, which will send notification of such filing to those who are currently on the list to receive e-mail notices for this case.

DATED: March 5, 2018 _____*/s/ Evan H. Kaploe*_____